IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ORION IP, LLC | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| vs. | § | CASE NO. 2:04-CV-297 |
| | § | |
| STAPLES, INC., ET AL. | § | |
| | § | |
| **Defendants** | § | |

## MEMORANDUM OPINION

This Memorandum Opinion construes terms in U.S. Patent Nos. 5,367,627 (the "'627 patent") and 5,615,342 (the "'342 patent").

## BACKGROUND

The following is a general summary of the patents-in-suit, and should not be construed as adopting any of the parties' proposed constructions. The actual disclosures of the patents-in-suit are discussed in greater detail below in conjunction with deciding the construction of disputed terms and phrases. The '627 patent generally describes a computerized system that assists a salesperson in training and with sales of parts corresponding to particularized products. The system includes a data storage device that stores graphic and textual information including specifications, features, and customer benefits. A display apparatus displays portions of this information. A part selection device electronically navigates through part-choice menus based on previously entered information. The invention is said to eliminate the need for salespeople to use more cumbersome paper-based methods of determining the most appropriate part for a customer.

The '342 patent generally describes an electronic system for creating customized product

1

proposals. The system queries a user to determine a customer's needs and interests and then uses stored pictures and text segments to create a customized proposal that appeals to the customer.

Defendants have submitted numerous terms for construction. Orion contends that only two terms require construction, "proposal" and "customized proposal." During the hearing, the parties eventually agreed that "customized proposal" does not require construction. Orion contends that the remaining terms that Defendants want construed do not require construction because they are used according to their well-understood lay meanings and Defendants' constructions either complicate the easily understood terms or include additional unwarranted limitations on the terms.

## APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very

2

instructive. *Id*. Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id*. Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314-15.

Claims "must be read in view of the specification, of which they are a part." *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id*. Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998); *see also Phillips*, 415 F.3d at 1323. The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the

3

specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition is entirely unhelpful to a court. *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## COMMON TERM[1]

*Proposal*

"Proposal" is common to both patents, and, although the patents are not related, the parties agree it should be construed consistently for both patents. The Court construes "proposal" to mean "information intended for conveyance to a potential customer." Orion argues the term should be construed as "sales information presented to a customer for promoting a sale." Defendants urge the Court to construe the term as "information to be considered for a potential sale." Thus, according to Orion, Defendants' construction does not limit the term to sales information or to information presented to a customer.

Orion argues its construction reflects the term's plain and ordinary meaning as understood

---

[1] Appendix A contains the relevant claims with the disputed terms in bold.

by those skilled in the art.  Orion contends that because both patents are for the purpose of selling, the relevant information must be "sales information."  Because Defendants' construction does not require "sales information" or presentation to a customer, Orion argues it ignores the inventions' very purposes.

Defendants argue that claim 1 of the '627 patent describes the proposal as containing parts-related information, which Orion's construction ignores. *See* '627 patent, col. 30:21-22 ("compiling the parts-related information into a proposal").  Defendants also argue that the Summary of the Invention in the '627 patent explains the "computerized system is provided for providing a salesperson with assistance related to . . . sales of parts . . . ."; thus the '627 patent does not require the proposal be shown to a customer. *See* '627 patent, col. 1:53-55.

The Court agrees with Defendants that Orion's phrase "sales information" is too vague to be helpful.  The Court also agrees with Defendants that, based on both patents' claim language and the '627 patent's Summary of the Invention, it is clear that the patents do not require that a proposal is shown to the customer.  The Court however agrees with Orion that the patents intend that this information is conveyed to the customer, otherwise it would do little to assist in a sale to a customer.  Accordingly, the Court construes "proposal" to mean "information intended for conveyance to a potential customer."

### '342 PATENT

#### *Customized Proposal*

The parties agreed that "customized proposal" does not require additional construction.  The Court agrees.  Since the Court has already construed "proposal," "customized proposal" is not a term with special meaning in the art or in this patent.  It is an everyday term that the jury will be

sufficiently familiar with.  Accordingly, it does not require construction.

*Customer*

Defendants urge the Court to construe the term to mean: "The potential purchaser of a product for whom the proposal is customized.  The customer is not the person using the computer to customize the proposal for the customer."  Thus, Defendants argue that the customer and user cannot be the same person.

The claims do distinguish between the roles of customer and user: "presenting to a user of the computer a plurality of questions . . . inputting into the computer a plurality of customer answers to the questions . . . ."  Col. 39:56-60; *see also* col. 41:65-42:2.  Thus, according to the claim language, the user is the person using the computer and the customer is the person who answers the plurality of questions relating to the product's features and uses.  But the claims do not require that different people fulfill the roles of customer and user.

Defendants argue that the claim language does require that the user and customer be different people because claim 1 is drawn to a method "for selling products to particular customers" by "presenting to a user" a plurality of questions.  Defendants contend the claim is directed to a situation where one user operates a computer in an effort to sell products to multiple customers.  The claim language belies Defendants' argument.  Claim 1 goes on to describe "inputting . . . a plurality of *customer* answers[2] . . . , the answers specifying *a customer's* desired product features and uses."  Col. 40:57-60 (emphasis added).  Thus, the steps of the claim do not require multiple customers.

Defendants also contend the specification describes the user and customer as different

---

[2] The Court also notes that in their proposed construction of "plurality of customer answers," Defendants do not contend that "plurality" modifies "customer," instead they argue plurality modifies "answers."

6

individuals.  *See e.g.*, col. 8:46-53 ("[W]hen a user begins to deal with a customer, the user will typically want to gather specific customer and product information . . . .").  Although in the preferred embodiment, the user and customer may be different individuals, Defendants have not shown that this limitation of different individuals as opposed to different roles should be imported into the claim language.  Accordingly, the Court does not adopt it.  "Customer" is not used in the claims in any manner different from that of its ordinary meaning in the art, which is no different than its ordinary lay meaning.  "Customer" does not require construction.

*User*

Defendants contend "user" should be construed to mean: "The person using the computer to customize the proposal.  The user is not the customer for whom the proposal is customized."  Thus, Defendants again assert that a "customer" and a "user" cannot be the same person.  For the reasons given above, the Court rejects this argument.  The patent uses this term according to its plain lay meaning.  This term does not require construction.

*Plurality of questions relating to features and uses of the products*

Defendants argue that this term and others like it, including "a plurality of questions related to at least one of a desired feature and desired use of the product," and "a plurality of customer answers to the questions, the answers specifying a customer's desired product features and uses," require constructions indicating that at least one question (or answer) relates to a desired product feature *and* at least one question (or answer) relates to a desired product use.  Orion argues that these terms do not require construction.  Orion also argues that "and" is fairly common in patent claiming and it is understood in patent parlance that "and" may be used in the disjunctive, depending on the context in which it is used.  Orion contends that the phrases mean there are desired features and

7

desired uses and the questions must relate to at least one of those—the questions must relate to either desired features, or desired uses, or both.

The Court agrees.  The specification does not require questions and answers on both features and uses.  The phrase "features and uses" appears only in the claims.  The '342 patent abstract refers to "needs and interests": "The system queries a user to determine a customer's needs and interests." The specification also says:

> The system queries a customer to determine his or her interests and desired options. The interests may include a "use" desired by the customer, such as a marina or golf course. The interests may also include the type of information, such as technical, that the customer would like in the proposal. The desired options may include the various features of interest to the customer, such as the type of engine desired.

Col. 2:12-19.  Thus, the specification language tends to equate "interest" with "use" and "features" with "options."  But nowhere is there any statement that the invention requires—at a minimum—a question and an answer on a customer's desired options (or features) and a question and an answer on a customer's desired interests (or uses).

It further seems clear that the patentee did not intend for the claims to be read to require questions and answers on both features and uses.  The claims are drawn generally to a method "for selling products."  *See*  Claim 1.  Some products may not have "options" or multiple "features" and the only actual variation is seeing that product in various environments.  Defendants' constructions would require that all products have both multiple "features" and "uses."  Further, in both claims 1 and 11, only one answer is required for the "selecting" step or steps.  It is not reasonable to read claim 1 as requiring a minimum of four questions and two answers, and claim 11 as requiring a minimum of two questions and two answers, when only one answer is required for the "selecting"

step or steps, especially when nothing in the specification or prosecution history requires the same.[3]

Thus the Court agrees with Orion that "and," in context, is used in the disjunctive.  Therefore Defendants' proposed construction is unduly narrow, and the Court does not adopt it.  Since this is the only clarification Defendants' construction makes to the claim language, the language does not require construction.

*Questions*

Defendants contend "questions" should be construed to mean: "More than one inquiry that requests an answer and ends with a question mark.  Commands and statements are not questions.  Menus presenting options are not questions.  Words or phrases not in question form that are selected with a cursor or selection device are not questions."  Defendants argue that this narrowed definition is necessary to reflect the Applicant's disclaimer of a broader meaning during prosecution to overcome prior art.

During prosecution, the Examiner rejected various claims in view of prior-art patents to Donald and Yourick (U.K. Patent No. 2,177,245 and U.S. Patent No. 4,775,935):

> Donald fails to expressly disclose presenting questions to users and receiving answers in order to associate the answers with stored images or text portions.  Instead, Donald's system is drawn to generating images or other information in response to direct user entries on a keyboard or user selections from a menu-driven software program.
>
> However, question and answer query systems for presenting a product for selection are known in the art. . . .  In particular, Yourick's system queries the user for preferences by asking questions and makes suggestions in response to selected answers in order to present a product most suited to the needs and desires of the user.  It would have been obvious to one of ordinary skill in the art at the time of the invention to apply the teaching of Yourick within the system disclosed by Donald

---

[3] This is in contrast to the *Superguide* case, which Defendants rely on, where the specification taught that the user must choose a value for each designated category.  *See Superguide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 887 (Fed. Cir. 2004).

with the motivation of presenting items which most likely appeal to the user.

Office Action 8/29/96, pp. 8-9.   The Applicant distinguished his invention from Donald and Yourick:

> It is respectfully submitted that Donald and Yourick, alone or in combination, fail to disclose this combination of features.  Neither Donald nor Yourick teach [*sic.*], for example, teach or suggest the selection of particular pictures and text segments in response to a customer's answers to computer generated questions.  Even if the teachings of Donald and Yourick are combined, the specific claimed combination is not suggested without use of hindsight and the teachings of the present application.

Amendment & Request for Reconsideration, 9/24/96.   The Examiner accepted the Applicant's argument:

> The prior art fails to teach or fairly suggest, either singly or in combination, the utilization of a customer's answers to computer-generated questions to select stored pictures of products, stored pictures of product environments, and stored text segments, and to compile this information accordingly, so as to generate a customized proposal for the sale of the product . . . .

Notice of Allowance, 10/2/96.  Defendants contend that the Applicant explicitly argued that neither Donald nor Yourick taught "questions" and "answers," thus disclaiming any broader meaning that "questions" might otherwise convey.

The Court disagrees.  Neither the Examiner's rejection, nor the Applicant's argument was premised on a narrowed definition of "questions."  Rather, the Examiner clearly reasoned that Donald failed to disclose the claimed combination of "presenting questions to users and receiving answers in order to associate the answers with stored images or text portions."  The Examiner did not reason that Donald failed to disclose "questions."  Similarly, the Applicant responded that the references did not disclose the claimed "combination of features." The Applicant did not contend that Donald failed to disclose "questions," nor would such an argument have succeeded because

Yourick taught using questions.  Instead, the Applicant argued the invention's novelty (and non-obviousness) was using questions and answers to select stored product pictures, product environment pictures, and text segments to generate a customized proposal.

Thus, there is nothing in the prosecution history indicating that the Applicant disclaimed a broader meaning of "questions."   Further, there is no reason within the patent to believe the Applicant used "questions" in any manner besides its ordinary meaning.  Accordingly, there is no need to construe the term, much less to stringently limit the meaning of "questions" as Defendants would like.

### *Features of the products*

Defendants argue the term should be construed to mean: "More than one distinctive quality of the product.  A product itself is not a feature of the product."  Defendants argue that the claim and specification confirm that the product itself is not a "feature."  Defendants direct the Court to two non-technical dictionaries that they assert support their construction.  But Defendants have not demonstrated why construction of this term is necessary.  They do not argue that the term is used in the claims or specification inconsistent with its ordinary meaning.  Their citation to non-technical dictionaries confirms that they do not believe the term is a technical term with a specialized meaning to those skilled in the art.  Defendants have not shown that their construction adds any clarity to the term, which is used according to its ordinary meaning.  Accordingly, this term does not require construction.

### *Uses of the products*

Defendants urge the Court to construe this term to mean: "More than one physical environment in which a product may be used, e.g., a marina or golf course.  A product itself is not

a 'use' of the product."  Defendants argue that claim 1 refers to "uses" as the physical environments in which a product may be used because environment pictures for the customized proposals are selected based on the customer's answers about "uses" for the desired products.  Defendants also contend that the specification supports this construction: "The interests may include a 'use' desired by the customer, such as a marina or golf course."  Col. 2:14-15.

Although the specification discloses that a "use" may be a location where the product may be used, there is nothing in the specification or claims that indicate "uses" should be restricted to its application in the preferred embodiment.  Defendants' argument that claim 1 supports their construction also fails.  Defendants contend that in claim 1 environment pictures are selected based on the customer's answers to questions about "uses" for the desired product.  *See* col. 39:56-60, 66-67.  Claim 1 includes a step of "selecting a particular product environment picture in response to at least one of the customer answers."  Col. 39:66-67.  But there is no necessary linkage between the product environment picture's selection and the customer's answer to a question about usage.  The claim states that the picture is selected in response to at least one of the customer answers.  Even under Defendants' constructions of "plurality of questions" and "customer answers," which require at least one question and answer about features and at least one question and answer about uses, the claim does not require that a product environment picture is selected in response to the customer's answer about use; the product environment picture is selected in response to at least one customer answer, and that answer could relate to the product's features.  Had the patentee intended to restrict the product environment picture selection as a response to the customer's answer about use, he could have easily done so in the claim language: "selecting a particular product environment picture in response to at least one of the customer answers relating to uses of the products."  Accordingly, the

12

Court will not import this limitation into the claim language.  Because it is not appropriate to restrict this term to its meaning in the preferred embodiment and there is no other support for finding that it is used in a manner different from its ordinary meaning, no further construction is necessary.

*Customer answers [to the questions]*

Defendants argue this term should be construed to mean: "At least one customer answer to each question.  Actions in response to command or statements are not answers.  Menu selections are not answers.  A selection—for example, with a cursor or other selection device—not in response to a question is not an answer."  Defendants justify this construction based on their arguments for their construction of the term "questions."  The Court rejects this construction for the same reasons it rejected Defendants' constructions of "questions"and "plurality of questions."  This term, like "questions," does not require construction.

*Storing product pictures, product environment pictures and text segments* and *The computer storing product images, product environment images and text segments*

Defendants argue these terms should be construed as "storing each of the product pictures, product environment pictures and text segments as separate and distinct items."  Defendants argue that the claims, the specification, and the prosecution history support their proposed construction.  This issue of whether the product pictures, product environment pictures, and text segments are "separate and distinct" implicates many of the remaining claim terms in the '342 patent.

*Claim language and specification*

Defendants contend the claim language supports their proposed construction because the claims recite the product pictures and product environment pictures as separate elements, which are selected through an independent process according to particular customer answers.  Further,

13

Defendants argue, the storing step, the selecting step, and the customized proposal step each refer separately to product pictures, product environment pictures, and text segments.  Defendants also argue the specification supports their proposed construction because the specification describes the pictures as "building blocks" to create a customized proposal and as being separate and distinct (though those words are not used in the specification).  *See* Abstract; col. 5:31-40, 1:9-16. Defendants argue Figure 1A shows separately stored product pictures, product environment pictures, and text segments and Figure 1B shows how they are combined to create a customized proposal for specific customers.  Defendants further contend that Figures 1A and 1B illustrate the invention itself rather than a preferred embodiment.  *See* col. 2:57-59, 60-62.

Orion responds that the claims do not limit whether the pictures and text segments can be stored separately or in combination with one another.  Orion contends that Defendants are attempting to limit the claims to the disclosed embodiment.  According to Orion, this is improper because the patentee did not demonstrate "a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction."  *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004).  Further, Orion does not agree that the specification supports the Defendants' contentions.  Orion contends that one statement from the specification that Defendants use to support their argument, "each combination of pictures for a finished template need not be pre-stored, since the system dynamically builds a template" actually supports Orion's position.  *See* col. 5:37-40. According to Orion, "each combination . . . need not" allows for the possibility that some images may be stored as combinations or sub-combinations.  Orion also contends that Figure 1A is merely illustrative and that, in an alternative embodiment, the shown pictures and segments can be stored in any combination.  *See* col. 5:48-51.

14

The Court agrees with Orion that the claim language does not require that the product pictures, product environment pictures, and text segments be stored separately.  Although the "selecting" steps require that three items be selected, the storing step does not limit how those items are stored.  The Court also agrees with Orion that the specification does not require that the product pictures, product environment pictures, and text segments be stored "separately and distinctly." Although the preferred embodiment may do so, there is no clear evidence from the specification that the actual invention requires doing so.  Given that claims are to be given their broadest meaning unless there is a clear disclaimer or disavowal, *see Liebel-Flarsheim Co.*, 358 F.3d at 906, the Court will not impose this limitation based on the claim language and specification.

*Prosecution history*

Defendants argue that the prosecution history of both the '342 patent and its parent application, which became the '490 patent, support their proposed construction.  Defendants contend that to overcome rejections based on Yourick and Donald, the Applicant argued that his invention did not use complete images but instead assembled different images based on customer-specific information.  '490 patent, Amendment & Response 6/19/95, p. 3.  Yourick did not combine customer-specific pieces of information, but simply retrieved and displayed predefined complete images.  *Id.* at 4.  Donald combined generic images, but did not disclose gathering and formatting customer-specific information.  *Id.* at 3.  The Examiner allowed the claim because

> [t]he prior art fails to teach or fairly suggest, either singly or in combination, the utilization of a customer's answers to computer-generated questions to select stored pictures of products, stored pictures of product environments, and stored text segments, and to *compile* this information accordingly, so as to generate a customized proposal for the sale of the product, as recited in independent Claim 30 (now renumbered 1).

15

'490 patent, Notice of Allowance 8/10/95, p. 2 (emphasis added).  According to Defendants, the Examiner understood that the product pictures, product environment pictures, and text segments were separate and distinct.

Defendants argue the Examiner also rejected various claims in light of Donald and Yourick reasoning that it would have been obvious to combine the references as discussed above.  '342 patent, Office Action 8/29/96, p. 7.  Defendants contend the Applicant overcame this rejection by arguing that neither Donald nor Yourick disclose the selection of "particular pictures" and text segments in response to a customer's answers to computer generated questions.  The Examiner allowed the '342 patent stating:

> The prior art fails to teach or fairly suggest, either singly or in combination, the utilization of a customer's answers to computer generated questions to select stored pictures of products, stored pictures of product environments, and stored text segments, and to compile this information accordingly, so as to generate a customized proposal for the sale of the product, and as recited in independent Claims 30, 35, 40, 45, and 50 (now renumbered 1, 6, 11, respectively).

'342 patent, Notice of Allowance 10/2/96.

First, Orion responds that claim 30 of the '490 patent did not include a "storing" element, and the Examiner and Applicant did not discuss whether the product pictures, product environment pictures, and text segments were stored separately or in combination. Orion argues the Applicant distinguished Donald on the grounds that Donald did not teach the claimed steps of gathering and formatting customer-specific information.  Orion contends that the Applicant did not make the statement that Donald "shows the combining of generic images and text to make a composite image" in an attempt to distinguish the Applicant's invention from Donald, but rather in an attempt to contrast Donald with Yourick who did "not combine various customer-specific pieces of

information."  *See* '490 patent, Amendment & Response 6/19/95, pp. 3-4.   Orion argues the

Applicant distinguished Yourick because Yourick did not teach "formatting," not because Yourick

taught "predefined complete images."  *Id.* at 4.   According to Orion, these statements to the

Examiner do not meet the standard for disclaimer.   Second, Orion contends the prosecution history

of the '342 patent is silent as to how the product pictures, product environment pictures, and text

segments are stored.  Orion insists this term does not require construction since it retains its plain

and ordinary meaning.

The Court agrees with Orion's characterization of the '342 patent's prosecution history.  The

Applicant distinguished the '342 patent from Donald and Yourick:

> The claimed system selects a particular product picture, a particular product
> environment picture, and a particular text segment "in response to at least one of the
> customer answers."  The selected pictures and text segment are used to generate "a
> customized proposal for the customer."
> . . . . Neither Donald nor Yourick teach, for example, teach or suggest the selection
> of particular pictures and text segments in response to a customer's answers to
> computer generated questions.

'342 patent, Amendment & Request for Reconsideration 9/24/96, p. 3.  The Applicant's statement

cannot be fairly characterized as a disclaimer or disavowal of the plain meaning of the claim term.

The Court also agrees with Orion's interpretation of the '490 patent's prosecution history.

The Applicant distinguished Donald and Yourick because "the present invention includes means for

'gathering customer-specific vehicle information' and for 'formatting the customer-specific vehicle

information according to criteria related to a layout of the customized proposal.'"  '490 patent,

Amendment & Response 6/19/95, p. 3.   The Applicant argued that although Donald mentioned

combining composite images, Donald did not disclose gathering and formatting customer-specific

information including vehicle pictures, environment pictures, and text.  *Id*.  The Applicant also

argued that because Yourick displayed complete images rather than assembled images, Yourick did not format the information for a particular layout.  *Id.* at 4.  The Applicant further argued that Yourick did not disclose associating a user's responses with product pictures, environments, and text. *Id.*

*Conclusion*

Although the claim language requires "storing in the computer product pictures, product environment pictures and text segments," neither the claim language itself, nor the specification, nor the prosecution history clearly limit the storing step to storing the product pictures, product environment pictures, and text segments as "separate and distinct" items.  Since Defendants urge the Court to separately construe "product pictures" and "product environment pictures," these terms do not require further construction.

*Product pictures [images]* and *Product environment pictures [images]*[4]

Defendants urge the Court to construe "product pictures" as: "More than one picture, each of which is of a product and does not include a product environment picture or text segment.  Each product picture must be capable of being placed within more than one product environment picture."  Defendants urge the Court to construe "product environment pictures" as: "More than one picture, each of which is an environment that will serve as a background within which a product picture is placed and which does not include either a product picture or text segment.  Each product environment picture must be capable of serving as a background for more than one product picture."

Given the interrelatedness of Defendants' proposed constructions for these terms, the Court considers them together.  To a great extent, these terms determine the "separate and distinct" issue

---

[4] "Product images" and "product environment images" are used in claim 11.

since it is these items that Defendants contend must be stored and selected separately and distinctly.

Defendants' constructions place two limitations on both terms: (1) exclusivity ("does not include .

. .") and (2) the ability to be superimposed on the other type of picture.

The specification does not define "product pictures" or "product environment pictures," but

the specification does give various examples of both.  According to the Abstract, "[t]he pictures may

include various products, environments in which the products may be used, and available product

options."  In describing Figure 1B, the specification also explains that

> Based upon the answers to the queries, the system may "fill in" the template 60 to
> customize a proposal for the customer. For example, if the customer has an interest
> in sailing or boating, the system may choose a picture of a marina environment 51 to
> use as the background or environment 62 in picture 61 of template 60. Likewise, if
> the customer has an interest in golfing, the system may choose a golf course
> environment 52. Within the environment 62, the system places a product 63 by
> selecting one of the plurality of product picture 56 based upon the customer's
> answers.
>
> Each product 63 typically has several options available to the customer, such
> as the type of engine and wheels. Based upon the customer's answers, which indicate
> the customer's desired options, the system may select parts from the picture database
> 50 for parts 64 and 65 on product 63 in the template.

Col. 5:4-20.  In that example, the environment picture is used as the "background" for product

picture 63.  The "parts" are illustrated as being superimposed on product picture 63.  Finally, the

specification explains,"[t]he system may also select one of the plurality of text segments 59 to fill

in text frame 66. The text in text frame 66 would typically correspond to picture 61 and, for example,

provide a description of the product or its performance specifications."  Col. 5:20-24.  Those text

segments are not illustrated as being superimposed on environment picture 62.  But all of this is only

exemplary since "[o]ne skilled in the art will recognize that the system is capable of creating

different types of templates or proposals based on different picture building blocks or different

combinations of the building blocks."  Col. 5:48-53.  Further, "the user may select from several generic types of pages to include in the printed proposal. The types of pages typically include cover sheets, personalized letters, product description pages, product specification pages, performance specification pages, trade-in specification pages . . . ."  Col. 11:63-12:3.  That is, the template may vary.

*Exclusivity limitation*

Thus, although the specification does not define what constitutes "product pictures" as opposed to "environment pictures," the specification does describe "environment pictures" as relating to the environment in which a product may be used and "product pictures" as relating to features and benefits of a product.   The patentee used the terms (1) "product pictures," (2) "environment pictures," and (3) "text segments" to refer to three separate types of pictures.  But that does not necessarily mean that a "product picture" must be devoid of anything but the product or that an "environment picture" must be devoid of anything but the environment.

Although the specification describes the invention in the context of selling vehicles, claim 1 is not limited to that context, but rather is drawn to "[a] computer assisted method of generating a customized proposal for selling products to particular customers."  Claim 11 is similar.  There is no inherent limitation on the types of "products" that may be sold.  Thus, while it is fairly easy to visualize a pickup truck as a "product," and a "marina" as an "environment," that is not necessarily the case when the products change.   An exclusivity limitation is not required by the claims, the specification, or the disclosed invention.

*Superimposed limitation*

The "storing" and "selecting" limitations of claim 1 do not go beyond the steps of "storing"

20

and "selecting."  Nothing in those limitations expressly or inherently requires that "[e]ach product picture must be capable of being placed within more than one product environment picture" or "[e]ach product environment picture must be capable of serving as a background for more than one product picture."  The "generating" step also does not expressly or inherently require those limitations.  The claim language simply calls for "generating" a proposal "using the particular product picture . . . ."  This step does not say how the pictures and text are used and does not require that the product picture be superimposed or placed within the environment picture.

As noted above, the user has flexibility in designing the template and formatting the proposal.  *See* col. 17:38-43; 18:64-19:27.  Although superimposing a product on a background or environment is certainly described in connection with the embodiment of Figure 1B, there is nothing in the specification that necessarily limits the invention to doing so.  Nor is there anything in the prosecution history of either the '342 patent or its parent application that would so limit the claims.

Thus, the method steps of "selecting" and then "generating a customized proposal" are not necessarily limited to the template of Figure 1B in which the "product picture" is superimposed on the "product environment picture."  Such a limitation is inconsistent with the claim language.  Claim 1 calls for "selecting" (1) "a particular product picture," (2) "a particular product environment picture," and (3) "a particular text segment."  The claim requires "selecting" a "text segment," but Figure 1B does not illustrate the "text segment" as being superimposed on the background or "product environment picture."

The specification speaks in terms of "linking" together product pictures, environment pictures and text, but "linking" is not restricted to "superimposing" or placing a product picture "within" an environment picture.  *See* col. 1:9-12.; 2:20-31.  The specification speaks in terms of

"linking" textual descriptions, yet even in the preferred embodiment, the textural description is not "superimposed" on a background or a "product environment picture."

*Conclusion*

Nothing in the claim language, specification, or prosecution history supports Defendants' proposed limitations.  Thus, the Court does not adopt them.  Without these limitations, Defendants' proposed construction of "product pictures" is "more than one picture, each of which is of a product."  This is no different than how "product pictures" would ordinarily be understood.  Accordingly, "product pictures" does not require construction.   Without these limitations, Defendants' proposed construction of "product environment pictures" is similarly reduced to "more than one picture, each of which is an environment."  Likewise, this adds nothing to the term "product environment pictures," and the term does not require further construction.

<u>Environments</u>

Defendants argue "environments" means: "More than one surrounding (e.g. a golf course, marina or city environment) in which a product may be used.  The surroundings in which a product may be used do not include artificial backdrops such as blank, solid colored or patterned backdrops.  A product is not an environment for its parts, for example, a car is not an environment for an engine and an engine is not an environment for a spark plug."  Defendants urge that an "environment" is separate from a product itself, or its parts, based on the separateness of the "product pictures" and "product environment pictures."   Defendants also contend that Figure 1B supports their position.  Thus, to some extent, this term also depends on the "separate and distinct" issue.

Orion contends this term is used according to its plain meaning and does not require construction.  The Court agrees.  During the hearing, Orion agreed that a blank background is not

an environment.  Orion also agreed that a solid colored or patterned backdrop is also not an environment.[5]  Therefore, the second sentence of Defendants' construction is unnecessary.  The Court also rejects Defendants' argument that the patent itself does not allow an object to be an environment for its parts.  This limitation is not required or implied by the claim language.  Figure 1B is "a diagram illustrating conceptually *an* electronic proposal template of the computerized proposal system," *see* col. 2:60-62 (emphasis added), and Defendants have not shown that one skilled in the art would believe this to be the only possible embodiment of the claimed system.  Accordingly, the Court will not import this limitation into the claim language.  Based on the Court's constructions regarding the "separate and distinct" issue and the reasons just given, the Court determines that this term does not require construction.

*Selecting a particular product in response to at least one of the customer answers; selecting a particular environment picture in response to at least one of the customer answers; selecting a particular text segment in response to at least one of the customer answers*

Defendants urge the Court to construe this term to mean: "Separately selecting one of multiple product pictures; separately selecting one of multiple product environment pictures; and separately selecting one of multiple text segments.  These three selections are performed separately such that one of multiple product environment pictures could be selected for the separately selected product picture.  Each of the separate selections must be based on a customer answer to at least one of the questions."  This term also raises the "separate and distinct issue" already discussed.

Both claims 1 and 11 require selecting at least three separate items, namely (1) a product picture, (2) a product environment picture, and (3) a text segment.  Neither claim 1 nor claim 11 requires selecting a product picture, product environment picture, and text segment based on separate

---

[5] Orion did qualify that a checkered floor might be an environment.

answers.  The claims allow selecting each of a product picture, a product environment picture, and

a text segment based on the same answer.  Although that is difficult to visualize in the context of the

preferred embodiment, i.e., cars, trucks, and other vehicles, again the claims of the '342 patent are

drawn to "products," which goes far beyond "vehicles."

This term does not require construction.  As Defendants' construction reflects, the claim

language expressly requires making three selections.  The Court rejects Defendants' construction

because, in addition to including the limitation the Court rejected in the previous paragraph, it does

not clarify the term.  The sentence "These three selections are performed separately such that one

of multiple product environment pictures could be selected for the separately selected product

picture" implies the product picture is selected first.  Defendants' construction also implies that the

product environment picture is selected "for" the product picture.  This implication is ambiguous,

since the claim requires that the environment picture be selected "in response to at least one of the

customer answers" and does not reference the product picture in this selection step.  Accordingly,

the claim language is sufficiently clear that a particular product picture, a particular product

environment picture, and a particular text segment are selected in three separate steps.

_Generating a customized proposal for the customer using the particular product picture, the_
_particular product environment picture and the particular text segment_ and _Generating a proposal_
_customized for the customer using the selected product image, the selected product environment_
_image and the selected text segment_

Defendants urge the Court to construe these terms as "[g]enerating individualized

information to be considered for the potential sale of a product that includes the particular selected

product picture, the particular selected product environment picture and the particular selected text

segment.  The product environment picture for the product picture is selected from different

environment pictures."  Defendants' proposal is based on their construction of "proposal" and their

position on the "separate and distinct" issue.  The Court has already decided both of these issues.

According, this term does not require construction.

*Customer answers of the customer to the plurality of questions*

Defendants argue this term should be construed to mean "more than one answer of the

customer, at least one of which specifies a product feature and at least one of which specifies a

product use."  The Court has already addressed the issue behind the parties' disagreement in its

construction of "plurality of questions relating to features and uses of the products."  Accordingly,

the Court determines this term does not require construction.

*Automatically selecting, in response to at least one of the customer answers, a product image, a*
*product environment image and a text segment*

Defendants contend this term means "[t]he computer separately selecting one of multiple

product pictures, separately selecting one of multiple product environment pictures, and separately

selecting one of multiple text segments.  The computer performs the selection separately such that

one of multiple product environment pictures could be selected for the separately selected product

picture.  The computer automatically makes each of the separate selections based on a customer

answer to at least one of the questions without additional input from the user."  This term's

construction turns on the "separate and distinct" issue discussed under the "storing" step.  Given the

Court's outcome on that issue, this term does not require construction.

### '627 PATENT

*A computerized method of selling parts for particular equipment specified by a customer*

Defendants urge the Court to construe this term as "a method each step of which is performed

25

by the computer." This limitation is not required by the claim language or the specification.  Further,

Defendants do not argue that "computerized method" is not likely to be understood by lay jurors.

Accordingly, the Court determines that this term does not require construction.

*Parts*

Defendants argue this term should be construed to mean "sub-components of equipment."

Orion contends "parts" does not require construction, and the Court agrees.  Defendants have not

demonstrated that this term is used in a manner inconsistent with its ordinary lay meaning.  Further,

Defendants' construction overly complicates the term.  "In the preferred embodiment, the types of

parts under the cross-referencing/parts selection procedure include batteries, filters, remanufactured

electric parts, lubrication and bearings." Col. 9:4-8.  While a lay jury would likely consider batteries

or lubrication to be "parts," it is less certain that they would consider them to be "sub-components

of equipment."

*Equipment*

Defendants argue "equipment" should be construed as "implements such as machinery or

tools used in an operation or activity."  Again, the Court agrees with Orion that this term does not

require construction.  "Equipment" is not used in a manner inconsistent with its ordinary lay

meaning.  Like "parts," "equipment" is a common word that any jury will understand.  Further,

Defendants' construction is again likely to be misleading.  As Defendants point out, Figure 29 lists

"industrial, road & misc. equipment, farm equipment, light trucks & vans, passenger cars, trucks,

buses & coaches" as examples of equipment.  It may not be obvious to a jury that they are to consider

light trucks and vans, passenger cars, trucks, and buses to be "implements."

*Receiving information identifying a customer's parts requirements for the equipment*

Defendants contend this term should be construed as "Receiving information identifying the parts required by the customer for the equipment.  Identification of the equipment alone is not sufficient because it is not enough to identify the parts which the customer requires for that equipment."  Defendants argue that merely identifying the equipment in which the part is to be used does not sufficiently identify the part the customer requires.  Defendants also contend that every embodiment described in the specification gives more information than that merely identifying the equipment.  Orion argues that Defendants' construction alters the claim language's meaning because their construction requires an identification of the "parts," whereas the claim requires the identification of the "parts requirements."  Orion also contends that claim 1's structure requires no more than an "identification of the equipment," which is the opposite of Defendants' construction.  The Court agrees.  This term does not require construction.

*Electronically specifying information identifying a plurality of parts and specifications for the parts*

Although Defendants originally submitted this term for construction, they withdrew the term during the hearing.  Orion contends the term does not require construction.  The Court agrees.

*Specification for the parts* and *Specifications corresponding to the . . . parts*

Defendants urge the Court to construe these terms as "specific characteristics of the parts, such as part numbers, part attributes or part descriptions."  Defendants contend "the patent specification lists 'part number,' 'part attribute' and 'part description' as examples of 'specifications.'  Dictionaries, in turn, consistently define 'specification' to include 'a specific character.'"  Defendants entirely fail to inform the Court why these terms should be limited to what the specification "may" include.  *See* col. 6:33-35.  To support their construction, Defendants also

27

turn to the Oxford English Dictionary as an example of the "consistent dictionary definition." Thus, Defendants do not contend that the terms have any meaning unique to the technology-at-issue. Defendants' only explanation for why these terms need construction is so that "Orion is not allowed to argue any meaning to the jury." The same could be said for every single word in any claim. This is not a sufficient reason to construe a term.

*Gathering parts-related information for one or more parts within the plurality of parts which meets the customer's requirements*

Defendants urge the Court to construe this term as "gathering information about parts that meet the customer's requirements from the electronically specified part information." Defendants argue this construction is necessary to define what is meant by "*the* plurality of parts," which refers to the parts that were defined in element (b) of claim 1 with the language "electronically specifying information identifying a plurality of parts." Defendants' construction requires multiple parts to meet the customer's requirements; the claim language requires *one* or more parts. Defendants construction is also susceptible to being misunderstood. Orion seems to understand the construction to mean that the information is gathered from the electronically specified part information. Defendants contend that the plurality of parts are those that were electronically specified.

The Court agrees with Orion that this phrase does not require construction. In some contexts, "the plurality of parts" or similar terms may be confusing to a lay jury. Here, the antecedent "plurality of parts" is identified in the previous step. Given the close proximity of the phrases, it is highly unlikely to be confusing.

*A method of selling . . . comprising . . . compiling the parts-related information into a proposal meeting the customer's requirements*

Defendants contend this term should be construed as "a method of selling . . . comprising .

28

. . collecting the parts-related information into a collection of parts-related information to be considered for the potential sale of the parts that meet the customer's requirements."   The construction dispute between the parties concerns the construction of "proposal," which this Court has already addressed.  The Court declines to further construe the term.

## CONCLUSION

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above.  For ease of reference, the Court's claim interpretations are set forth in a table as Appendix B.  The claims with the disputed terms in bold are set forth in Appendix A.

Orion submitted two terms for the Court's construction, "proposal" and "customized proposal," but "customized proposal" was eventually withdrawn.  Defendants also wanted those terms construed and submitted twenty-one additional distinct terms.  These terms included words such as "parts," "equipment," and "specifications."  After examining both sides' arguments, the Court has determined none of those terms required construction because they are all used in accordance with their ordinary lay meanings.  These are common words familiar to most English speakers.  Defendants did not argue that these terms carried a unique meaning in the art making their construction necessary.  Instead, many of Defendants' constructions seemed geared to their future non-infringement arguments.  The Court realizes that claim construction may prove to be crucial to parties' infringement and invalidity cases, but those issues are best left for summary judgment and jury arguments.  The Court is aware that other courts give parties time limits for their *Markman* arguments or limit the number of terms they may submit for construction.  This Court does not do that.  Instead, the Court fully expects the parties and their attorneys to limit the terms they submit to those that might be unfamiliar to the jury, confusing to the jury, or affected by the specification

29

or the prosecution history.  *See United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy.").   Attorneys practicing before this Court would be wise to realize that although every word used in a claim has a meaning, not every word requires a construction.

   **So ORDERED and SIGNED this 15th day of December, 2005.**

   **LEONARD DAVIS**
   **UNITED STATES DISTRICT JUDGE**

## APPENDIX A

### U.S. PATENT NO. 5,615,342

1. A computer assisted method of generating a **customized proposal** for selling products to particular **customers**, the method comprising the steps of:

    presenting to a **user** of the computer a **plurality of questions relating to features and uses of the products**;

    inputting into the computer a **plurality of customer answers** to the **questions**, the answers specifying a **customer's** desired product **features** and **uses**;

    **storing** in the computer **product pictures, product environment pictures and text segments**;

    **selecting a particular product picture in response to at least one of the customer answers**;

    **selecting a particular product environment picture in response to at least one of the customer answers**;

    **selecting a particular text segment in response to at least one of the customer answers**; and

    **generating a customized proposal for the customer using the particular product picture, the particular product environment picture and the particular text segment**.

3. A method as recited in claim 1, further comprising the steps of:

    storing a plurality of product specifications related to producing the products in a variety of configurations which are of varying interest to different potential **customers** who may purchase the product;

    linking at least one of the **customer answers** with a product specification which is of particular interest to the **customer**; and

    generating, for inclusion in the proposal, one or more individualized pages comprising the product specification which is of particular interest to the **customer**.

4. A method as recited in claim 1, further comprising the steps of:

    storing a plurality of performance specifications related to the performance of the products in a variety of configurations which are of varying interest to different potential **customers** who may purchase the product;

    linking at least one of the **customer answers** with a performance specification which is of particular interest to the **customer**; and

    generating, for inclusion in the proposal, one or more individualized pages comprising the performance specification which is of particular interest to the **customer**.

5. A method as recited in claim1, further comprising the steps of:

    presenting a series of predetermined queries related to financing a product of interest to different potential **customers** who may purchase the product;

    receiving individualized answers to the predetermined queries, the individualized answers relating to financing a product configuration of particular interest to the **customer**; and

    generating, for inclusion in the proposal, one or more individualized pages comprising the financing information related to the product configuration which is of particular interest to the **customer**.

11. A computer assisted method of generating a **customized proposal** for a **customer** to facilitate a sale of a product, **the computer storing product images, product environment images and text segments**, the method comprising the steps of:

    prompting a **user of the computer** with a **plurality of questions related to at least one of a desired feature and desired use of the product**;

    receiving into the computer **customer answers of the customer** to the plurality of **questions**;

    **automatically selecting, in response to at least one of the customer answers, a product image, a product environment image and a text segment**; and

    **generating a proposal customized for the customer using the selected product image, the selected product environment image and the selected text segment**.

13. A method as recited in claim 11, further comprising the steps of:

storing a plurality of product specifications related to producing the products in a variety of configurations which are of varying interest to different potential **customers** who may purchase the product;

linking at least one of the **customer answers** with a product specification which is of particular interest to the **customer**; and

generating, for inclusion in the proposal, one or more individualized pages comprising the product specification which is of particular interest to the **customer**.

14. A method as recited in claim 11, further comprising the steps of:

storing a plurality of performance specifications related to the performance of the products in a variety of configurations which are of varying interest to different potential **customers** who may purchase the product;

linking at least one of the **customer answers** with a performance specification which is of particular interest to the **customer**; and

generating, for inclusion in the proposal, one or more individualized pages comprising the performance specification which is of particular interest to the **customer**.

15. A method as recited in claim 11, further comprising the steps of:

presenting a series of predetermined queries related to financing a product of interest to different potential **customers** who may purchase the product;

receiving individualized answers to the predetermined queries, the individualized answers relating to financing a product configuration of particular interest to the **customer**; and

generating, for inclusion in the proposal, one or more individualized pages comprising the financing information related to the product configuration which is of particular interest to the **customer**.

**U.S. PATENT NO. 5,367,627**

1. **A computerized method of selling parts for particular equipment specified by a customer**, comprising the steps of:

    a) **receiving information identifying a customer's parts requirements for the equipment,** comprising the step of receiving equipment application information, comprising an identification of the **equipment** with which one or more parts are to be used;

    b) **electronically specifying information identifying a plurality of parts and specifications for the parts**;

    c) **gathering parts-related information for one or more parts within the plurality of parts which meets the customer's requirements**, comprising the step of electronically associating at least one of the **parts** within the plurality of **parts** with the received equipment application information; and

    d) receiving the gathered parts-related information and compiling the parts-related information into a **proposal** meeting the customer's requirements.

5. The method of claim 1 wherein the step (d) comprises the step of generating a printed version of the **proposal**.

6. The method of claim 1 wherein the step (d) further comprises the step of including within the **proposal specifications corresponding to the** one or more **parts** which meets the customer's requirements.

7. The method of claim 1 wherein the step (d) further comprises the step of including within the **proposal** price information corresponding to the one or more **parts** which meets the customer's requirements.

8. The method of claim 1 wherein the step (d) comprises the step of including within the **proposal** graphical information corresponding to the one or more **parts** which meets the customer's requirements.

9. The method of claim 1 wherein the step (d) comprises the step of including within the **proposal** textual information corresponding to the one or more **parts** which meets the customer's requirements.

11. The method of claim 1 wherein the step (d) comprises the step of graphically illustrating within the **proposal** construction features of a particular one of the **parts** which meets the customer's requirements.

APPENDIX B

U.S. PATENT NO. 5,615,342

| Claim Language | Court's Construction |
|---|---|
| 1. A computer assisted method of generating a **customized proposal** for selling products to particular **customers**, the method comprising the steps of: | **Proposal:** information intended for conveyance to a potential customer<br><br>**Customized proposal:** no construction necessary<br><br>**Customer:** no construction necessary |
| presenting to a **user** of the computer a **plurality of questions relating to features and uses of the products**; | **User [of the computer]:** no construction necessary<br><br>**Plurality of questions relating to features and uses of the products:** no construction necessary<br><br>**Questions:** no construction necessary<br><br>**Features of the products:** no construction necessary<br><br>**Uses of the products:** no construction necessary |
| inputting into the computer a **plurality of customer answers** to the **questions**, the answers specifying a **customer's** desired product **features** and **uses**; | **Customer answers [to the questions]:** no construction necessary<br><br>**A plurality of customer answers to the questions, the answers specifying a customer's desired product features and uses:** no construction necessary |
| **storing** in the computer **product pictures, product environment pictures and text segments**; | **Storing product pictures, product environment pictures and text segments:** no construction necessary<br><br>**Product pictures:** no construction necessary<br><br>**Environments:** no construction necessary<br><br>**Product environment pictures:** no construction necessary |
| **selecting a particular product picture in response to at least one of the customer answers; selecting a particular product environment picture in response to at least one of the customer answers; selecting a particular text segment in response to at least one of the customer answers; and** | **Selecting a particular product picture in response to at least one of the customer answers; selecting a particular environment picture in response to at least one of the customer answers; selecting a particular text segment in response to at least one of the customer answers:** no construction necessary |

34

| | |
|---|---|
| **generating a customized proposal for the customer using the particular product picture, the particular product environment picture and the particular text segment**. | **generating a customized proposal for the customer using the particular product picture, the particular product environment picture and the particular text segment.:** no construction necessary |
| 3. A method as recited in claim 1, further comprising the steps of:<br><br>storing a plurality of product specifications related to producing the products in a variety of configurations which are of varying interest to different potential **customers** who may purchase the product;<br><br>linking at least one of the **customer answers** with a product specification which is of particular interest to the **customer**; and<br><br>generating, for inclusion in the proposal, one or more individualized pages comprising the product specification which is of particular interest to the **customer**. | **Customer:** no construction necessary<br><br>**Customer answers:** no construction necessary |
| 4. A method as recited in claim 1, further comprising the steps of:<br><br>storing a plurality of performance specifications related to the performance of the products in a variety of configurations which are of varying interest to different potential **customers** who may purchase the product;<br><br>linking at least one of the **customer answers** with a performance specification which is of particular interest to the **customer**; and<br><br>generating, for inclusion in the proposal, one or more individualized pages comprising the performance specification which is of particular interest to the **customer**. | **Customer:** no construction necessary<br><br>**Customer answers:** no construction necessary |

| | |
|---|---|
| 5. A method as recited in claim1, further comprising the steps of:<br><br>presenting a series of predetermined queries related to financing a product of interest to different potential **customers** who may purchase the product;<br><br>receiving individualized answers to the predetermined queries, the individualized answers relating to financing a product configuration of particular interest to the **customer**; and<br><br>generating, for inclusion in the proposal, one or more individualized pages comprising the financing information related to the product configuration which is of particular interest to the **customer**. | **Customer:** no construction necessary |
| 11. A computer assisted method of generating a **customized proposal** for a **customer** to facilitate a sale of a product, **the computer storing product images, product environment images and text segments**, the method comprising the steps of: | **Customized proposal:** no construction necessary<br><br>**Customer:** no construction necessary<br><br>**Product images:** no construction necessary<br><br>**Environment:** no construction necessary<br><br>**Product environment images:** no construction necessary<br><br>**The computer storing product images, product environment images and text segments:** no construction necessary |
| prompting a **user of the computer** with a **plurality of questions related to at least one of a desired feature and desired use of the product**; | **User [of the computer]:** no construction necessary<br><br>**Questions:** no construction necessary<br><br>**Feature [of the product]:** no construction necessary<br><br>**Use [of the product]:** no construction necessary<br><br>**A plurality of questions related to at least one of a desired feature and desired use of the product:** no construction necessary |
| receiving into the computer **customer answers of the customer** to the plurality of **questions**; | **Customer answers:** no construction necessary<br><br>**Customer answers of the customer to the plurality of questions:** no construction necessary |

36

Case 2:04-cv-00297-LED   Document 307   Filed 12/15/05   Page 37 of 40 PageID #:  5213

| | |
|---|---|
| **automatically selecting, in response to at least one of the customer answers, a product image, a product environment image and a text segment**; and | **Automatically selecting, in response to at least one of the customer answers, a product image, a product environment image and a text segment:** no construction necessary |
| **generating a proposal customized for the customer using the selected product image, the selected product environment image and the selected text segment.** | **Generating a proposal customized for the customer using the selected product image, the selected product environment image and the selected text segment:** no construction necessary |
| 13. A method as recited in claim 11, further comprising the steps of:<br><br>storing a plurality of product specifications related to producing the products in a variety of configurations which are of varying interest to different potential **customers** who may purchase the product; | **Customer:** no construction necessary |
| linking at least one of the **customer answers** with a product specification which is of particular interest to the **customer**; and<br><br>generating, for inclusion in the proposal, one or more individualized pages comprising the product specification which is of particular interest to the **customer**. | **Customer answers:** no construction necessary |
| 14. A method as recited in claim 11, further comprising the steps of:<br><br>storing a plurality of performance specifications related to the performance of the products in a variety of configurations which are of varying interest to different potential **customers** who may purchase the product;<br><br>linking at least one of the **customer answers** with a performance specification which is of particular interest to the **customer**; and<br><br>generating, for inclusion in the proposal, one or more individualized pages comprising the performance specification which is of particular interest to the **customer**. | **Customer:** no construction necessary<br><br>**Customer answers:** no construction necessary |

| 15. A method as recited in claim 11, further comprising the steps of:<br><br>presenting a series of<br><br><br>predetermined queries related to financing a product of interest to different potential **customers** who may purchase the product;<br><br>receiving individualized answers to the predetermined queries, the individualized answers relating to financing a product configuration of particular interest to the **customer**; and<br><br>generating, for inclusion in the proposal, one or more individualized pages comprising the financing information related to the product configuration which is of particular interest to the **customer**. | **Customer:** no construction necessary |
| --- | --- |

38

**U.S. PATENT NO. 5,367,627**

| Claim Language | Court's Construction |
|---|---|
| **1. A computerized method of selling parts for particular equipment specified by a customer,** comprising the steps of: | **A computerized method of selling parts for particular equipment specified by a customer:** no construction necessary<br><br>**Parts:** no construction necessary<br><br>**Equipment:** no construction necessary |
| a) **receiving information identifying a customer's parts requirements for the equipment,** comprising the step of receiving equipment application information, comprising an identification of the **equipment** with which one or more `are to be used; | **Receiving information identifying a customer's parts requirements for the equipment:** no construction necessary |
| b) **electronically specifying information identifying a plurality of parts and specifications for the parts;** | **Electronically specifying information identifying a plurality of parts and specifications for the parts:** no construction necessary<br><br>**Specifications for the parts:** no construction necessary |
| c) **gathering parts-related information for one or more parts within the plurality of parts which meets the customer's requirements**, comprising the step of electronically associating at least one of the **parts** within the plurality of **parts** with the received equipment application information; and | **Gathering parts-related information for one or more parts within the plurality of parts which meets the customer's requirements:** no construction necessary |
| d) receiving the gathered parts-related information and compiling the parts-related information into a **proposal** meeting the customer's requirements. | **Proposal:** information intended for conveyance to a potential customer<br><br>**A method of selling . . . comprising . . . compiling the parts-related information into a proposal meeting the customer's requirements:** no construction necessary |
| 5. The method of claim 1 wherein the step (d) comprises the step of generating a printed version of the **proposal** | **Proposal:** information intended for conveyance to a potential customer |
| 6. The method of claim 1 wherein the step (d) further comprises the step of including within the **proposal specifications corresponding to the** one or more **parts** which meets the customer's requirements. | **Proposal:** information intended for conveyance to a potential customer<br><br>**Specifications corresponding to the . . . parts:** no construction necessary<br><br>**Parts:** no construction necessary |

| | |
|---|---|
| 7. The method of claim 1 wherein the step (d) further comprises the step of including within the **proposal** price information corresponding to the one or more **parts** which meets the customer's requirements. | **Proposal:** information intended for conveyance to a potential customer<br><br>**Parts:** no construction necessary |
| 8. The method of claim 1 wherein the step (d) comprises the step of including within the **proposal** graphical information corresponding to the one or more **parts** which meets the customer's requirements. | **Proposal:** information intended for conveyance to a potential customer<br><br>**Parts:** no construction necessary |
| 9. The method of claim 1 wherein the step (d) comprises the step of including within the **proposal** textual information corresponding to the one or more **parts** which meets the customer's requirements. | **Proposal:** information intended for conveyance to a potential customer<br><br>**Parts:** no construction necessary |
| 11. The method of claim 1 wherein the step (d) comprises the step of graphically illustrating within the **proposal** construction features of a particular one of the **parts** which meets the customer's requirements. | **Proposal:** information intended for conveyance to a potential customer<br><br>**Parts:** no construction necessary |